**THE LAW OFFICES OF JACOB ARONAUER**
Jacob Aronauer (JA 9184)
225 Broadway, 3rd Floor
New York, New York 10007
(212) 323-6980
jaronauer@aronauerlaw.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
PABLO ALVAREZ, on behalf of himself
and others similarly situated,

                          Plaintiff,

-against-

BRIARCLIFF BUS COMPANY, INC. and
JOHN BORHO, individually,

                          Defendants.
------------------------------------------------------------------------X

COMPLAINT

FLSA COLLECTIVE ACTION

CLASS ACTION

Plaintiff Pablo Alvarez ("Alvarez"), on behalf of himself and all others similarly situated, by his attorney, Jacob Aronauer, of The Law Offices of Jacob Aronauer, complaining of Briarcliff Bus Company, Inc. and John Borho, individually (collectively herein "Defendants"), alleges the following:

**PRELIMINARY STATEMENT**

1. This is a class action brought on behalf of all bus drivers who work for Briarcliff Bus Company, Inc. and John Borho (collectively the "Defendants").

2. Briarcliff Bus Company, Inc. is a transportation company that contracts primarily with schools to transport students in Westchester County, New York.

3. This class action is brought on behalf of Defendants' bus drivers.

4. This is a class action on behalf of Plaintiff and all similarly situated bus drivers who elect to opt-in to this action pursuant to the FLSA, 29 U.S.C. §§ 201 *et seq.,* and specifically,

the collective action provision of 29 U.S.C. § 216(b), to remedy violations of the wage-and-hour and wage notice provisions of the FLSA that occurred at the bus company owned and controlled by Defendants.

5. Plaintiff and the FLSA collective class seek injunctive and declaratory relief against Defendants' unlawful actions, compensation for their failure to pay overtime wages, and liquidated damages, compensatory damages, pre-judgment and post-judgment interest, and attorneys; fees and costs, pursuant to the FLSA and NYLL.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action under 28 U.S.C. § 1331, 29 U.S.C. §§ 216(b)(c), and 217; and 28 U.S.C. § 1337.

7. In addition, this Court has supplemental jurisdiction over the NYLL claims under 28 U.S.C. § 1367, because they arise from a common nucleus of operative facts with the federal claims and are so related to the federal claims as to form part of the same case or controversy under Article III of the United States Constitution.

8. This Court has supplemental jurisdiction over the New York state law claims under the principles of pendent and ancillary jurisdiction.

9. Venue is proper in this district under 28 U.S.C. § 1391(b)(c) and 28 U.S.C. § 1391(b)(2), because all or a substantial part of the events or omissions giving rise to the claims occurred herein.

10. The Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. § 2201 and § 2202.

## PARTIES

11. Plaintiff Pablo Alvarez is and was at all times relevant hereto an individual residing in Westchester County, New York.

12. Plaintiff Alvarez was employed by Defendants in Westchester County, New York as a bus driver.

13. Defendant Briarcliff Bus Company ("Briarcliff Bus Corp.") is a corporation engaged in charter and private school bus transportation services.

14. John Borho ("Borho") owns and maintains control, oversight and the direction of Briarcliff Bus Corp.

15. Defendant Borho is a person engaged in business in Westchester County, who is sued individually in his capacity as an owner, officer and/or agent of Briarcliff Bus Corp. Borho exercised sufficient control over Briarcliff Bus Corp. to be considered Plaintiff's employer under the FLSA and NYLL, and at all times material hereto said defendant had the authority to hire and fire employees and established and maintained policies regarding the pay practices at the Briarcliff Bus Corp.

16. Defendants employed Plaintiff and similarly situated employees at all times relevant.

17. Defendant Borho has had substantial control over Plaintiff and similarly situated employees' working conditions and the practices alleged herein.

18. Defendant Briarcliff Bus Corp. is a domestic business corporation.

19. Upon information and belief, Briarcliff Bus Corp.'s principal place of business is a lot located adjacent to the Scarborough train station in Scarborough, New York.

20. Upon information and belief, Briarcliff Bus Corp.'s business address is P.O. Box 9103, Scarborough, NY 10510.

21. At all times relevant to this action, Defendant Briarcliff Bus Corp. was an "enterprise engaged in interstate commerce" within the meaning of the FLSA.

22. Defendant Briarcliff Bus Corp. has (1) employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (2) an annual gross volume of sales in excess of $500,000.00.

23. Upon information and belief, Defendant Briarcliff Bus Corp. employs approximately 35 bus drivers.

## FACTS

**Plaintiff Alvarez's Employment at Briarcliff Bus Corp.**

24. From approximately September 1995 through his termination in August 2018, Alvarez was employed as a driver on behalf of Defendants.

25. Throughout Alvarez's employment with Defendants, Alvarez worked transporting students from EF Academy International Boarding School and Briarcliff Bus Corp. High School.

26. EF Academy International Boarding School and Briarcliff Bus Corp. High School are both located in Westchester County, New York.

27. Throughout virtually his employment with Defendants, Alvarez was scheduled to work more than 40 hours each week.

28. Throughout virtually his employment with Defendants, even though Alvarez was not exempt, he was not paid any overtime.

29. Throughout Alvarez's employment, Defendants did not require him to "clock in" using a time tracking device.

30. However, when Alvarez left work, Defendants required him to "clock out" by calling a manager to inform him that his shift had ended.

31. Defendants always paid Alvarez by check.

32. When Defendants paid Alvarez, they did not provide him with an accurate notation of the hours he worked.

33. Throughout Plaintiff's employment, the checks paid to Alvarez listed him working a different number of hours than he actually worked each week.

34. The majority of checks issued to Plaintiff throughout his employment listed Plaintiff as working fewer hours than he actually work each week.

35. In August 2018, Plaintiff Alvarez met with several co-workers to discuss the possibility of filing a lawsuit against Defendants.

36. The discussion between Alvarez and his co-workers pertained to the possibility of bringing a lawsuit against Defendants for unpaid wages.

37. These discussions as stated in paragraphs 35 and 36, respectively, are protected activity under the FLSA and NYLL, respectively.

38. On or around August 7, 2018, Defendants terminated Plaintiff's employment.

39. Defendants terminated Plaintiff in direct response to Plaintiff engaging in the protected activity discussed in paragraph 35 and 36, respectively.

**Plaintiff Alvarez's Work Schedule and Salary at Briarcliff Bus Corp.**

40. Throughout Plaintiff's employment with Defendants, Alvarez worked seven (7) days a week.

41. Throughout Alvarez's employment, Alvarez was required to work from approximately 7:00 a.m. to 5:00 p.m. on weekdays.

5

42. Alvarez was required to work past 5:00 p.m. on weekdays when excursions, usually sporting events or field trips, were scheduled.

43. Alvarez, due to his seniority, was assigned to work excursions nearly every day of the workweek.

44. Weekday excursions lasted until as late as 12:00 a.m.

45. Alvarez also worked on weekends driving students to excursions.

46. Weekend excursions often lasted from 9:00 a.m. until 9:00 p.m.

47. Overall, Alvarez routinely worked as many as 85 hours per workweek.

48. At the time of his termination, Alvarez was paid approximately $24.85 per hour listed on his pay stub.

49. Throughout Alvarez's employment with Defendants, even though Alvarez worked more than 40 hours each week, Alvarez was not paid any overtime whatsoever.

50. From 2017 to the end of his employment, Alvarez did not routinely work over forty hours per workweek.

51. Alvarez's schedule was reduced for health related reasons.

52. The reduction in Alvarez's schedule was not reflective of the class that continued to work more than 40 hours a week without any overtime pay.

**Routes of Bus Drivers at Briarcliff Bus Corp.**

53. Upon information and belief, Briarcliff Bus Corp. has a fleet of approximately forty vehicles, including yellow schools buses of various sizes and coach buses.

54. The bus drivers at Defendants have assigned routes only within the state of New York.

55. Bus drivers are assigned a principal route picking up and dropping off individual students at their homes throughout Westchester County, New York.

56. For example, Plaintiff Alvarez would pick up his bus in Scarborough, New York each morning.

57. Alvarezv would then drive the same route each day to pick up the students he was assigned and drive them to the campus of Briarcliff High School, located in Briarcliff Manor, New York.

58. At the end of the school day, Plaintiff Alvarez would drop off the same students at their homes and return the bus to Scarborough, New York.

59. The above-described daily routes did not cross state lines and were not intended to cross state lines.

60. Bus drivers were also assigned to drive for planned excursions that deviated from their daily route.

61. Virtually all of these excursions were within the state of New York.

62. For example, the students would go to museums in New York City, Broadway plays and the World Trade Center.

63. These types of excursions within New York state regularly took place.

64. In other words, every year Alvarez and the class could expect to travel to museums in New York City, Broadway plays and the World Trade Center.

**Defendants' Violations of the Wage Theft Prevention Act**

65. The NYLL and Wage Theft Prevention Act require employers to provide all employees with a written notice of wage rates.

66. Throughout the relevant time period, Defendants paid Plaintiff and the class wages without any accompanying statement that accurately listed the rate or rates of pay, the

number of regular hours worked and the number of overtime hours worked, gross wages, deductions, allowances, if any, claimed as part of the minimum wage, and net wages.

67. Plaintiff was never given a notice containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with NYLL 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; and anything otherwise required by law.

## COLLECTIVE ACTION ALLEGATIONS

68. The claims in this Complaint arising out of the FLSA are brought by Plaintiff on behalf of themselves and other similarly situated persons who are current and former employees of Briarcliff Bus Corp. since the date three years prior to the filing of this Complaint who elect to opt-in to this action (the "FLSA Collective").

69. On information and belief the FLSA Collective consists of approximately 75 similarly situated current and former employees at Briarcliff Bus Corp. who have been victims of Defendants' common policy and practices that have violated their rights under the FLSA by, *inter alia*, willfully denying them overtime wages.

70. As part of its regular business practice, Defendants have intentionally, willfully and repeatedly harmed Plaintiff and the FLSA Collective by engaging in a pattern and/or policy of violating the FLSA. This policy and/or policy includes, *inter alia*, the following:

8

      i.     failing to pay employees the applicable overtime rate for all hours worked;

      ii.    failing to keep accurate records of hours worked by employees as required by the FLSA and NYLL.

71. Defendants have engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation. Defendants' unlawful conduct has been intentional, willful and in bad faith, and has caused significant damage to Plaintiff and the FLSA Collective.

72. The FLSA Collective would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit. These similarly situated employees are known to Defendants, are readily identifiable and locatable through their records. These similarly situated employees should be notified of and allowed to opt into this action, pursuant to 29 U.S.C. § 216(b).

73. The FLSA and NYLL require that employers pay all employees at least one and one-half (1.5) times the employee's wage for all hours worked in excess of 40 during any workweek, unless they are exempt from coverage.

74. Defendants failed to compensate Plaintiff and members of the FLSA Collective at the overtime wages for all hours worked. The exact accounting of such discrepancy can only be determined upon completion of discovery.

75. Plaintiff and members of the FLSA Collective were not given notice containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal or lodging allowances; the regular pay day designated by the employer in accordance with NYLL § 195(1); and anything otherwise required by law.

76. Defendants paid Plaintiff and members of the FLSA Collective wages without any accompanying statement listing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission or other; the regular hourly rate or rates of pay; the overtime hours worked; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages in accordance with NYLL § 195(3).

## THE BUS DRIVER CLASS

77. **Proposed Class.** The proposed class comprises all individuals who worked for Defendants as bus drivers during the applicable period.

78. The bus drivers all worked for Defendants and worked more than 40 hours per week. The bus drivers, however, were not paid any overtime for all work performed after 40 hours.

79. In addition, the bus drivers did not receive accurate wage statements when they were paid by Defendants, as required under the NY Wage Theft Prevention Act

80. **Ascertainability.** The identity of all class members is readily ascertainable from Defendants' records, and class notice can be provided to all class members by means permitted by Rule 23 of the Federal Rules of Civil Procedure. To be effective, class notice should be provided not only through written communication to each class member's last known address as reflected in Defendants' records, but also through Spanish language newspaper and radio announcements, workplace postings, and other alternative means of notice designed to reach this class of transient, non-English speaking bus drivers. Many class members are no longer employed by Defendants, cannot be reached at the last known address in Defendants' records, and do not have access to traditional English-speaking media.

81. **Numerosity.** The size of the class makes a class action both necessary and efficient. The size of the class consists of approximately 75 employees. Members of the class are ascertainable but so numerous that joinders is impracticable.

82. **Common Questions Of Law and Fact.** This case poses common questions of law and fact affecting the rights of all class members, including:

    a) the policies, practices, programs, procedures, protocols, and plans of Defendants regarding payment of overtime wage compensation;

    b) the policies, practices, programs, procedures, protocols, and plans of Defendants regarding wage notices;

    c) whether the named Defendants conspired with each other and/or with any unnamed co-conspirator, as alleged herein; and

    d) what relief is necessary to remedy Defendants' unfair and unlawful conduct as herein alleged.

83. **Typicality.** The claims of the individual Plaintiff are typical of the claims of the class as a whole. Briarcliff Bus Corp.'s unlawful policies are typical of the unlawful wage policies and practices that have and will continue to operate to deny other class members lawful compensation.

84. **Adequacy of Class Representation.** The individual Plaintiff can adequately and fairly represent the interests of the class as defined above, because his individual interests are consistent with, and not antagonistic to, the interests of the class.

85. **Propriety of Class Action Mechanism.** Defendants have implemented a series of unlawful schemes that are generally applicable to the class, making it appropriate to issue final injunctive relief and corresponding declaratory relief with respect to the class as a whole. Class certification is also appropriate because the common questions of law and fact predominate over any questions affecting only individual members of the class. The

prosecution of separate actions against Defendants by individual class members would create a risk of inconsistent or varying adjudication, which would establish incompatible standards of conduct for Defendants. For all these and other reasons, a class action is superior to other available methods for the fair and efficient adjudication of the controversy set forth in this amended complaint.

86. This action is properly maintainable as a class action under Federal Rule of Civil Procedure ("FRCP") 23(b)(3).

87. **Proposed Class.** All said persons, including Plaintiff, are referred to herein as "the Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants.

88. Plaintiff brings his FLSA and the NYLL claims, pursuant to Fed. R. Civ. P. 23, on behalf of themselves and a class of persons consisting of all non-exempt employees that worked as bus drivers for Defendants from December 31, 2012 to the date of the final judgment in this matter ("Rule 23 Class").

89. Finally, Plaintiff brings his NYLL claims, pursuant to Fed. R. Civ. P. 23 on behalf of himself and a class of persons consisting of all non-exempt employees that did not receive their wage notices as required under the New York Wage Theft Prevention Act.

90. Excluded from the Rule 23 Class are Defendants, Defendants' legal representatives, officers, directors, assignors and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in any of the Defendant entities; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

91. The employees in the Rule 23 Class are so numerous that joinder of all members is impracticable.

92. Upon information and belief, the size of the Rule 23 Class, which includes current and former employees of Defendants, is approximately 100 people. Although the precise number of such employees is unknown, the facts on which the calculation of that number depends are presently within the sole control of Defendants.

93. Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting them individually and include, but are not limited to, the following:

   (a) willfully failing to pay its employees, including Plaintiff and the Class Members, the appropriate overtime wages for hours worked in excess of 40 hours per workweek;

   (b) willfully failing to record all of the time that its employees, including Plaintiff and the Class Members, have worked for the benefit of Defendants;

   (c) failing to provide appropriate notices to Plaintiff and the Class Members under the New York Wage Theft Prevention Act;

   (d) willfully failing to pay Plaintiff and the class members the correct compensation under the NYLL.

### FIRST CAUSE OF ACTION
### FLSA Overtime Violations, 29 U.S.C. §§ 201, *et seq*.
### (Brought on behalf of Plaintiff and the FLSA Collective)

94. Plaintiff, on behalf of himself and the FLSA Collective, re-alleges and incorporate by reference all allegations in all preceding paragraphs.

95. Throughout the relevant time period, Plaintiff and the FLSA Collective worked in excess of forty (40) hours per workweek.

96. At all relevant times throughout their employment, Defendants operated under a policy of willfully failing and refusing to pay Plaintiff and the FLSA Collective one and one-half

times the regular hourly rate of pay for work in excess of forty (40) hours per workweek, and willfully failing to keep records required by the FLSA, even though Plaintiff and the FLSA Collective were entitled to receive overtime payments.

97. At all relevant times throughout Plaintiff and the FLSA Collective's employment, Defendants willfully, regularly and repeatedly failed to pay the required overtime rate of one and one-half times their regular hourly rate for hours worked in excess of forty (40) hours per workweek.

98. Defendants' decision not to pay overtime was willful.

99. Plaintiff and the FLSA Collective seek damages in the amount of their unpaid overtime compensation, liquidated damages as provided by the FLSA for overtime violations, attorney's fees and costs, and such other legal and equitable relief as the Court deems just and proper.

**SECOND CAUSE OF ACTION**
**Unpaid Overtime Wages Under New York Labor Law**
**(Brought on behalf of Plaintiff and the Rule 23 Class)**

100. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

101. At all times relevant to the action, Plaintiff was employed by Defendants within the meaning of NY Labor Law § 652 and 12 NYCRR § 142-2.2.

102. Defendants failed to pay Plaintiff the overtime premium of one and a half times the regular hourly rate of pay, in violation of the NY Labor Law.

103. Defendants' failure to pay required overtime was willful.

104. As a result of Defendants' NY Labor Law violations, Plaintiff is entitled to recover from Defendants unpaid overtime wages and liquidated damages, as well as reasonable

attorney's fees and the costs of the action, including interest, pursuant to the NY Labor Law.

### THIRD CAUSE OF ACTION
### New York Labor Law- Failure to Provide Wage Statements
### (Brought on behalf of Plaintiff and the Rule 23 Class)

105. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

106. Defendants have willfully failed to supply Plaintiff with accurate statements of wages as required by NYLL, Article 6, § 195(3), containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

107. Through their knowing or intentional failure to provide Plaintiff with the wage statements required by the NYLL, Defendants have willfully violated NYLL, Article 6, §§ 190 *et seq.*, and the supporting New York State Department of Labor Relations regulations.

108. Due to Defendants' willful violations of NYLL, Article 6, § 195(3), Plaintiff is entitled to statutory penalties of two hundred fifty dollars for each work day that Defendants failed to provide Plaintiff with accurate wage statements, or a total of five thousand dollars each, reasonable attorney's fees, costs and injunctive and declaratory relief, as provided for by NYLL, Article 6, § 198(1-d).

## FOURTH CAUSE OF ACTION
### Unlawful Retaliation in Violation of the FLSA § 215(a)(3))
### (Brought on behalf of Plaintiff)

109. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

110. 29 U.S.C. § 215(a)(3) makes it unlawful for an employer "to discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceedings under or related to this chapter [of the FLSA]."

111. Defendants violated the FLSA by terminating Plaintiff's employment because he discussed filing a lawsuit against Defendants with co-workers.

112. As a direct and proximate consequence of Defendants' intentional, unlawful, and discriminatory employment policies and practices, Plaintiff has suffered and continues to suffer monetary damages, including a loss of income.

113. As a direct and proximate consequence of the Defendants' intentional, unlawful, and discriminatory employment policies and practices, the Plaintiff has suffered, and continues to suffer, non-monetary damages including, but not limited to, humiliation and mental and physical pain and suffering.

114. By the foregoing reasons, Plaintiff seeks equitable relief as may be appropriate to serve the purposes of the anti-retaliation provision, including but not limited to an amount to be determined at trial, plus liquidated damages in the amount equal to the amount of unpaid wages, interest, attorneys' fees and costs.

## FIFTH CAUSE OF ACTION
### Unlawful Retaliation in Violation of NYLL § 215(1)(A)
### (Brought on behalf of Plaintiff)

115. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

116. Pursuant to NYLL § 215(1)(a), "[n]o employer or his or her agent, or the officer or agent of any corporation, partnership, or limited liability company shall discharge, penalize, or in any other manner discriminate or retaliate against any employee because (i) because such employee has made a complaint to his or her employer…that the employer has violated any provision of this chapter…"

117. Defendants violated the NYLL by terminating Plaintiff's employment after he discussed filing a lawsuit against Defendants with coworkers.

118. As a direct and proximate consequence of Defendants' intentional, unlawful, and discriminatory employment policies and practices, Plaintiff has suffered and continues to suffer monetary damages, including a loss of income.

119. As a direct and proximate consequence of the Defendants' intentional, unlawful, and discriminatory employment policies and practices, the Plaintiff has suffered, and continues to suffer, non-monetary damages including, but not limited to, humiliation and mental and physical pain and suffering.

120. By the foregoing reasons, Plaintiff seeks equitable relief as may be appropriate to serve the purposes of the anti-retaliation provision, including but not limited to an amount to be determined at trial, plus liquidated damages in the amount equal to the amount of unpaid wages, interest, attorneys' fees and costs.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff pray for the entry of an order and judgment against Defendants Briarcliff Bus Corp. and John Borho, jointly and severally, as follows:

(a) Designation of the action as a collective action on behalf of the FLSA Collective Members (asserting FLSA claims and state claims) and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of the action, and permitting them to assert timely FLSA claims and state claims in the action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

(b) Certification of this case as a class action pursuant to Rule 23;

(c) Designation of Plaintiff as representative of the Rule 23 Class and counsel of record as Class Counsel;

(d) Damages for unpaid overtime due to Plaintiff and the Rule 23 Class Members in an amount to be determined at the trial of the action, along with liquidated damages as provided by the NYLL, interest, attorney's fees, and the cost of the action;

(e) Statutory penalties of fifty dollars for each work day that Defendants have failed to provide Plaintiff and the Rule 23 Class Members with accurate wage notices, or a total of five thousand dollars, as provided for by NYLL, Article 6 § 198;

(f) Statutory penalties of two hundred fifty dollars for each work day that Defendants failed to provide Plaintiff and the Rule 23 Class Members with accurate wage statements, or a total of five thousand dollars, as provided by for by NYLL, Article 6 § 198;

(g) Pre-judgment and post-judgment interest;

(h) Reasonable attorneys' fees and costs of the action;

(i) For such other further and different relief as this Court deems just and proper.

Dated: December 31, 2018
      New York, New York

                                             **THE LAW OFFICES OF JACOB ARONAUER**

                                             By:   */s/ Jacob Aronauer*
                                                       Jacob Aronauer (JA: 9184)
                                                       *Attorney for Plaintiff*