The Law Offices of Jacob Aronauer
225 Broadway, 3rd Floor
New York, New York 10007
(212) 323-6980
jaronauer@aronauerlaw.com

July 8, 2019

**Via ECF**
The Honorable Cathy Seibel
United States District Court
Southern District of New York
300 Quarropas Street.
White Plains, NY 10601

       Re:   *Alvarez v. Briarcliff Bus Company, Inc. et al.*
               18-cv-12379 (CS)

Dear Judge Seibel:

      This office represents Plaintiff Pablo Alvarez ("Alvarez" or "Plaintiff") in the above-captioned matter. Plaintiff, together with Defendants Briarcliff Bus Company, Inc. ("Briarcliff Bus Company") and John Borho ("Borho") (collectively, "Defendants"), respectfully requests that Your Honor approve the settlement reached in this matter. A copy of the fully-executed settlement agreement ("Settlement Agreement") is annexed hereto as Exhibit A.

## HISTORY OF LAWSUIT

      Plaintiff worked for Briarcliff Bus Company as a bus driver from September 1995 through August 2018. Throughout Alvarez's employment with Defendants, Alvarez transported students by school bus to and from various locations within and outside of New York State.

      On December 31, 2018, Plaintiff commenced this action against Defendants, asserting claims under the Fair Labor Standards Act ("FLSA") for alleged unpaid overtime and under New York Labor Law ("NYLL") for alleged failure to provide annual wage notices and accurate wage statements.

      Defendants filed an answer to Plaintiff's complaint on March 1, 2019, in which Defendants denied Plaintiff's claims and his entitlement to any damages and asserted various affirmative defenses, including, *inter alia*, that Plaintiff is exempt from the overtime requirements of the FLSA pursuant to the "motor carrier exemption" of 29 U.S.C. § 213(b)(1).

      On February 5, 2019, Your Honor issued an order referring the case to mediation, after which the parties exchanged certain limited pre-mediation discovery and then engaged in preliminary settlement discussions. The settlement discussions were based on

{00116415 1 }

the records of Defendants, damages calculations provided by Plaintiff and representations made by Defendants with respect to their ability to withstand a large judgment.  No settlement was reached at that time.

On April 30, 2019, the parties participated in a court-ordered mediation with Philip M. Halpern, Esq. While the parties did not resolve the case at the mediation, they did make progress in bridging the monetary "gap" between the parties, and they engaged in a frank discussion regarding the strengths and weaknesses of their respective positions.

On May 13, 2019, the parties appeared before Your Honor for an initial case conference, after which a Civil Case Discovery Plan and Scheduling Order was entered. Shortly thereafter, Defendants produced to Plaintiff additional discovery relevant to their defenses, and the parties were able to successfully negotiate a resolution.  The parties thereafter executed their June 28, 2019 Settlement Agreement and herein seek Your Honor's approval of their agreement.

### Plaintiff's Position

Plaintiff appreciates that a significant issue in this case is whether Plaintiff was exempt from the FLSA's overtime requirements during his employment with Briarcliff Bus Company pursuant to the motor carrier exemption, which is explained in further detail *infra*.  While it was disputed between the parties as to how often Plaintiff traveled interstate, there was no question that Plaintiff did travel interstate as part of his employment. Thus, if Plaintiff was found exempt, Plaintiff risked not receiving any recovery whatsoever.  Plaintiff, who was an engineer in his native country in Colombia and represented by experienced counsel, was advised of and well-aware of the law and the risks he faced going forward.

Plaintiff believes that, if successful at trial, he could recover up to $60,964.80 in unpaid overtime wages and notice damages. *See* Exhibit B for a spreadsheet calculating Plaintiff's alleged damages (the Court should note that only Plaintiff believes he would recover these damages—Defendants do not agree with Plaintiff)

According to Plaintiff, for nearly the entire duration of his employment, Plaintiff was scheduled to work more than 40 hours a week.  Also according to Plaintiff, during the workweek, Plaintiff worked from 7:00 a.m. to 5:00 p.m.  Plaintiff would also be required to work past 5:00 pm on weekdays when excursions, usually sporting events or field trips, were scheduled.  In addition, Plaintiff would have to transport students for weekend excursions.

Plaintiff's wages on behalf of Defendants varied.  Plaintiff alleged that throughout a large portion of Plaintiff's employment with Defendants, he was not paid any overtime whatsoever. Other times, Plaintiff was paid at "straight time" for overtime hours worked. When this occurred, though, Plaintiff claims that he was not paid for all hours worked as Defendants did accurately document the hours worked by Plaintiff.  Based on the records provided by Defendants and Plaintiff's best recollection, Plaintiff believes that he was owed $50,294.91 in unpaid overtime wages.

2

Prejudgment interest under the NYLL has been applied for the years covered by the NYLL – namely the period between three to six years before the complaint was filed. The annual interest rate used in these calculations in 9%. *See Collado v. DonnyCarney Rest. L.L.C.*, 2015 US Dist. LEXIS 104728 at * 19 (S.D.N.Y. July 24, 2015). As of June 24, 2019, Plaintiff calculates prejudgment interest to total $16,778.15.

Plaintiff also claims that he was not provided wage notices or accurate wage statements in accordance with the NYLL, Article 6, § 195(1) and § 195(3). Thus Plaintiff believes that he would be entitled to damages of $5,000.00 for each of these infractions under NYLL, Article 6, § 198, for a total of $10,000.00.

Plaintiff also asserted a claim for retaliation under the FLSA and NYLL to recover damages stemming from his alleged unlawful termination. Plaintiff believes he was terminated for discussing with other individuals the possibility of filing a lawsuit for unpaid wages.

In accordance with the FLSA and NYLL, if successful in prosecuting his claims, Plaintiff would be also entitled to recover his reasonable attorneys' fees and expenses. Alvarez paid for the filing fee and service himself, which amounted to $550. The attorneys' fees in this case total, $17,970.50 and a breakdown of the attorneys' is annexed hereto as Exhibit C.

## Defendants' Position

In contrast to Plaintiff's position, Defendants believe that Plaintiff was correctly and fully paid throughout his employment with Briarcliff Bus Company and that Defendants were compliant with the FLSA and NYLL.

With respect to Plaintiff's claim for unpaid overtime, Defendants assert that Plaintiff was exempt from the FLSA and NYLL's overtime requirements under the motor carrier exemption.[1] Defendants are confident in their ability to prove that the exemption applies given the facts that Plaintiff regularly crossed state lines as part of his job duties and that doing so was an integral part of his job as a Briarcliff Bus Company bus driver

The "motor carrier exemption" exempts from the FLSA's overtime requirements "an employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of services pursuant to the provisions of section 31502 of Title 49. 29 U.S.C. § 213(b)(1). Section 31502(1) provides that "[t]he Secretary of Transportation may prescribe requirements for qualifications and maximum hours of service of employees of, and safety of operation and equipment of, a motor carrier." The term "motor carrier" "means a person providing motor vehicle transportation for compensation." 49 U.S.C. § 13102. The scope of the Secretary's

---

[1] NYLL has adopted the same exemptions as the FLSA so the motor carrier exemption defeats all of Plaintiff's overtime claims. *See Fox v. Commonwealth Worldwide Chauffeured Transp. of NY, LLC*, 865 F. Supp. 2d 257, 268–69 (E.D.N.Y. 2012) ("The New York State Department of Labor takes the position that the overtime provisions contained in that law expressly incorporate the FLSA's exemptions. Federal courts have followed the Department's guidance, applying FLSA exemptions to state Labor Law claims." (internal citation omitted).)

authority appears in 29 U.S.C. § 13501(1)(A) and provides that the Secretary has "jurisdiction . . . over transportation by motor carrier and the procurement of that transportation to the extent that passengers, property, or both, are transported by motor carrier . . . between a place in . . . a State and a place in another State[.]"

Taken together, the motor carrier exemption exempts an employee from the FLSA overtime requirements if (i) the employer is a "motor carrier," and (ii) the employee "engage[s] in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate . . . commerce[.]" *Dauphin v. Chestnut Ridge Transp., Inc.*, 544 F. Supp. 2d 266, 273-74 (S.D.N.Y. 2008) (internal quotation marks and citation omitted).

With respect to the first requirement, there is no dispute that Briarcliff Bus Company qualifies as a motor carrier as its very business is to provide transportation for compensation. *See id.* at 273 (school bus company qualifies as "motor carrier").

With respect to the second requirement, Defendants assert that Briarcliff Bus Company's records demonstrate that Plaintiff transported students out-of-state on a near-weekly basis, and Defendants would testify that Briarcliff Bus Company's drivers could be and are called to an interstate trip at any time. *Id.* at 274-75 ("Where . . . interstate travel constitutes a natural, integral and inseparable part of the employees' duties, such that any employee is likely to be called on to perform interstate travel, the employees are all subject to the motor carrier exemption[.]" (*quoting Morris v. McComb*, 332 U.S. 422, 430 (1947)) (internal quotation marks omitted).)

With respect to Plaintiff's retaliation claim, Defendants deny that Plaintiff's employment was terminated and likewise deny that Defendants were aware of any supposed conversations between Plaintiff and other employees regarding a possible unpaid wages claim. It is Defendants' position that Plaintiff voluntarily resigned from his employment after Defendants received a complaint about Plaintiff from Briarcliff Bus Company's biggest customer and Plaintiff was appropriately reprimanded.

Finally, with respect to Plaintiff's NYLL claims under the New York Wage Theft Prevention Act, Defendants deny that they engaged in incomplete or inaccurate recordkeeping and deny that Plaintiff did not receive accurate notice of his wages. But even if it were established that Defendants' wage statements were in technical violation of the NYLL, Defendants would rely on the affirmative defense of NYLL § 198(1-b) that Defendants "made complete and timely payment of all wages" due to Plaintiff during his employment.

## Fairness and Reasonableness of the Settlement

The agreed total settlement sum is $27,500.00 and is payable within 30 days after Court approval. The settlement agreement provides that the settlement amount will be allocated as follows: Plaintiff will receive $19,000.00, and The Law Offices of Jacob Aronauer will receive $8,500.00 (the attorneys' fees will be shared with Vincent Bauer, Esq., who assisted The Law Offices of Jacob Aronauer in this case).

4

Under *Cheeks* and its progeny, a court should consider the totality of the circumstances, including but not limited to the below factors, in determining whether a proposed settlement is fair and reasonable:

> (1) the plaintiff's range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement' is the product of arm's-length bargaining between experienced counsel'; and (5) the possibility of fraud or collusion. *Beckert v. Ronirubinov*, No. 15 CIV. 1951 (PAE), 2015 WL 8773460, at *1 (S.D.N.Y. Dec. 14, 2015) (*citing Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012)).

In this case, as a preliminary matter, the "agreement is the product of arm's length bargaining between experienced counsel" and involves no "possibility of fraud or collusion." Id. As for the range of recovery, the settlement amount represents a reasonable compromise between Plaintiff's best case scenario and the possibility of zero recovery given Defendants' argument that Plaintiff was exempt from the FLSA pursuant to the motor carrier exemption. On the one hand, Plaintiff risked not obtaining *any* recovery if found exempt or of winning at trial but being stuck with an empty judgment given Defendants' ability to pay. On the other hand, if Plaintiff were to succeed on all of his claims, his potential recovery (when taking into consideration liquidated damages) could have been higher than the settlement amount. Thus, this settlement represents a reasonable compromise between the parties that takes all of these factors into account and eliminates the cost, burden and risk of further litigation for both parties.

This settlement enables the parties to "avoid both the anticipated burdens and expenses in establishing their respective claims and defenses." Id. Due to not having a job for approximately half a year, Plaintiff would like to timely receive a recovery. Furthermore, Plaintiff is aware of the risks moving forward because of the Motor Carrier Act. Finally, this settlement will spare Defendants additional legal fees and expenses, prevent the further accrual of Plaintiff's attorneys' fees, and relieve Defendants of the burden of further defending a federal court action.

## Attorneys' Fees and Counsel's Qualifications[2]

Jacob Aronauer is the managing partner of The Law Offices of Jacob Aronauer. Mr. Aronauer has been practicing law since 2005 and started his own firm in 2013. Since 2013, Mr. Aronauer's practice has specialized on FLSA and NYLL cases. Mr. Aronauer has handled close to 100 wage and hour matters. In 2018 and 2019, Mr. Aronauer was voted a "Rising Star" in the New York area by Super Lawyers. Upon reviewing what other attorneys in the same geographic area with similar experience charge, we believe $350 an hour is fair.

---

[2] For purposes of this settlement, Defendants take no position on and do not contest the allocation of the settlement between Plaintiff and his counsel or Plaintiff's counsel hourly rate or work performed.

Paralegals in this case employed by Mr. Aronauer's firm charge $150 per hour. The paralegals in The Law Offices of Jacob Aronauer are highly educated, with extensive experience in the law. Thus, the paralegals often do tasks that in other firms would be performed by lawyers, including drafting documents such as complaints, letters to the court, and discovery requests, and performing legal research. The paralegals are also experienced in conducting client interviews to determine the facts of each case, and they draft the damages spreadsheets.

Individually, the paralegals in The Law Offices of Jacob Aronauer have impressive resumes. John Jozkowski and Sasha Safavi have law degrees from Brooklyn College, and both recently passed the bar exam in New York State. Katheryn Filgate has a law degree from the University Santo Tomas in Bogota, Colombia, where she worked for Deloitte before moving to the United States. Elias Stern-Rodriguez is a graduate of Reed College, where he studied philosophy, and is also a graduate of Phillips Exeter Academy.

Sian Ricketts and Karin Weston both work part-time as freelance musicians in early classical music, and received higher education degrees in this field from Case Western Reserve University (Ms. Ricketts received a DMA, and Ms. Weston received an MA). Ms. Ricketts has worked for The Law Offices of Jacob Aronauer for the past fours years, and Ms. Weston for the past three, and they have both worked extensively on over fifty wage and hour cases.

Vincent Bauer is the principal attorney at The Law Offices of Vincent Bauer. Mr. Bauer has over 20 years of experience specializing in employment law in New York. Many of these years included working at Morgan Lewis, where Mr. Bauer primarily practiced employment law. Mr. Bauer was named a Super Lawyer in 2011 and again from 2013-2018. Mr. Bauer's hourly rate is $450 per hour.

We respectfully ask that the Court take note that in *Tapia v. Mount Kisco Bagel Company Inc. et al.*, 18-cv-02864 (KMK), Judge Karas found the hourly rate of both Mr. Aronauer and Mr. Bauer to be acceptable. *See* dkt 27 and 29, respectively.

### Work Performed by Plaintiff's Counsel

Plaintiff's counsel will receive $8,500 of the settlement amount. We respectfully submit the allocation of $8,500 for Plaintiff's counsel should be approved. *See Rangel v. 639 Grant St. Meat & Produce Corp.*, 2013 U.S. Dist. LEXIS 134207, at *4 (E.D.N.Y. Sept. 19, 2013) (Judge Bloom awarding plaintiff's counsel one-third of the settlement amount, plus costs); *see also Vidal v. Eager Corp.*, 2018 U.S. Dist. LEXIS 42113, at *4-5 (E.D.N.Y. March 13, 2018); *see also, Central States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 50 F.3d 229, 239 (2d Cir. 2007); *Chavarria v. N.Y. Airport Serv., LLC*, 875 F. Supp.2d 2d 164, 178 (E.D.N.Y. June 25, 2012) (awarding fees in the amount of one-third of the total settlement); *Reyes v. Buddha-Bar NYC*, 2009 U.S. Dist. LEXIS 45277, at *14 (S.D.N.Y. May 29, 2009) (awarding fees in the amount of 33% of the total settlement).

Plaintiff's counsel will receive less than the amount they billed in this matter. Plaintiff's counsel took the risk of litigating this matter on a contingency basis, especially considering there was significant risk that Plaintiff could be found exempt under the motor carrier exemption.   Furthermore, as shown above, it is standard for the Court to approve 1/3 of the settlement after deduction of expenses.  Plaintiff's counsel sought less than they were entitled to recover under the terms of their retainer agreement. Plaintiff's counsel sought less than they are entitled to recover because the case settled relatively quickly.

Plaintiff's counsel performed work that helped procure the settlement.  Plaintiff's counsel met with Plaintiff on multiple occasions so as to better ascertain the strengths and weaknesses of his case, and engaged in extensive negotiations with Defendants' counsel. Plaintiff's counsel also diligently researched the corporate Defendant's business and the FLSA Motor Carrier Exemption.  Plaintiff's counsel intricately documented Plaintiff's claimed damages in a detailed spreadsheet, and drafted paper discovery requests. Plaintiff's counsel furthermore attended the mediation session, as well as participated in the initial case conference.

Courts in the Second Circuit frequently award attorneys in FLSA settlements for as much as 33% of the total recovery in fees.  *See Garcia v. Atlantico Bakery Corp.,* 2016 WL 3636659, at * 1 (S.D.N.Y. June 29, 2016) ("[O]ne-third of the total award is the customary contingency percentage in FLSA cases."); *see also Osasio v. Big Apple Sanitation, Inc.,* No. 13-cv-4758, 2016 WL 5376241, at * 2 (E.D.N.Y. Mar. 16, 2016) (noting that the fee sought was "less than the typical contingency fee percentage of 33 1/3"), adopted by 2016 WL 5390123 (E.D.N.Y. Sept. 26, 2016).

The work performed by Plaintiff's counsel is as follows:

| Name | Hours | Requested Rate per Hour | Total Fees |
|---|---|---|---|
| Jacob Aronauer | 15.6 | $350.00 | $5,570.00 |
| Vincent Bauer | 8.4 | $450.00 | $3,780.00 |
| Paralegals | 57.47 | $150.00 | $8,620.50 |
| Total | | | $17,970.50 |

Courts in this Circuit acknowledge the role wage and hour attorneys serve in protecting the public interest in the "private attorney general role" and have affirmed the

importance of adequate compensation to incentivize wage and hour litigation. *Prasker v. Asia Five Eight LLC*, No. 08 Civ. 5811, 2010 WL 476009, at *6 (S.D.N.Y. Jan 6, 2010). The percentage method "provides a powerful incentive for the efficient prosecution and early resolution of litigation, which clearly benefits both litigants and the judicial system." *In re Lloyd's Am. Tr. Fund Litig.*, No. 96 Civ. 1262, 2002 WL 31663577, at *25 (S.D.N.Y. Nov. 26, 2002).

Respectfully submitted,

Jacob Aronauer
*Attorney for Plaintiff*

cc: **Via ECF**
    *All attorneys on record*

**EXHIBIT A**

## SETTLEMENT AGREEMENT AND RELEASE

The Settlement Agreement and Release ("Agreement") is entered as of June 28, 2019, between PABLO ALVAREZ (the "Plaintiff") on the one hand, and BRIARCLIFF BUS COMPANY, INC. and JOHN BORHO (together, the "Defendants"), on the other hand. Plaintiff and Defendants are referred to herein collectively as, the "Parties".

## RECITALS

**WHEREAS**, Plaintiff commenced a civil action by filing a complaint ("Complaint") against Defendants on December 31, 2018, in the United States District Court for the Southern District of New York, styled *Alvarez v. Briarcliff Bus Company et al.*; Case No. 7:18-cv-12379-CS (the "Litigation");

**WHEREAS**, Defendants answered the Complaint on March 1, 2019, and denied and continue to deny any and all liability and/or wrongdoing with respect to Plaintiff;

**WHEREAS**, the Court has made no findings as to the merits of the Complaint;

**WHEREAS**, the Parties now desire to settle fully and finally all wage, hour and employment-related claims that Plaintiff had, has, or may have had against the Defendants, including but not limited to those claims embodied in the aforementioned Litigation;

**WHEREAS**, Plaintiff, with the full assistance of and through consultation with his counsel, freely and voluntarily enters into this Agreement in exchange for the promises contained herein which pertain to Defendants and the full payment due from Defendants as provided for herein;

**WHEREAS**, nothing contained herein shall, in any way, be construed or considered to be an admission by Defendants of any liability under, violation of or noncompliance with any federal, state, or local law or statute;

**WHEREAS**, the Parties believe that this settlement is fair and reasonable and in the best interests of all Parties; and

**NOW, THEREFORE**, in consideration of the mutual covenants and other good and valuable consideration herein, the receipt and legal sufficiency of which are hereby acknowledged, the Parties agree as follows:

A.    **Settlement Payment.**

1.    In exchange for the promises contained in this Agreement, the Defendants, in accordance with the terms of this Agreement, shall pay to Plaintiff and Plaintiff's counsel the total settlement amount of Twenty-Seven Thousand Five Hundred Dollars and Zero cents ($27,500.00) ("Settlement Amount"), inclusive of attorneys' fees and costs, as follows:

i.    Within 30 days of the Court's approval of this Agreement pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), Defendants will make the following two payments:

a.  A check payable to "Pablo Alvarez" in the amount of $19,000.00;

b.  A check payable to "The Law Offices of Jacob Aronauer" in the amount of $8,500.00, provided Defendants have received an IRS Form W-9 for Plaintiff's counsel;

ii.    Defendants will provide Mr. Alvarez and The Law Offices of Jacob Aronauer with an IRS Form 1099 for the Settlement Amount by the end of the fiscal year;

iii.    Alvarez and his counsel accept full and exclusive responsibility for the payment of any and all taxes due with respect to their respective portions of the Settlement Payment (the "Tax Liability"). If any governmental taxing authority or court of competent

{00116368 1 }                                     2

jurisdiction ultimately determines that these payments were improperly classified, Alvarez and his counsel agree that they shall be solely liable for the payment not only of the Tax Liability, but any tax deficiency, penalty, and/or interest charged with respect to their failure to pay the Tax Liability, and will indemnify, defend, and hold the Defendants harmless with respect to the Tax Liability or in any proceeding in which the Tax Liability is sought. Alvarez has had the opportunity to obtain advice from a tax professional, and the Defendants make no representation as to the taxability of the consideration provided under this Agreement.

     iv.  The checks referenced in Paragraphs A(1)(i)(a) and (b) shall be mailed or delivered to the attention of Jacob Aronauer, Esq. of The Law Offices of Jacob Aronauer, 225 Broadway, 3rd Floor, New York, NY 10007 so as to be received no later than the date indicated in Paragraph A(1)(i) above. The Law Offices of Jacob Aronauer shall be responsible for distributing Plaintiff's portion of the Settlement Amount to Plaintiff.

    2.  Simultaneous herewith, the parties, through their respective counsel, shall execute the Stipulation of Voluntary Dismissal with Prejudice, which is attached hereto as Exhibit A. Counsel for Plaintiff shall file the Stipulation of Voluntary Dismissal with Prejudice, attached hereto as Exhibit A, within 5 business days of Plaintiff's counsel's receipt of the Settlement Payment.

**B.**  **Release and Covenant Not to Sue.**

    1.  In consideration for the Settlement Amount and other consideration to be provided by Defendants as described in this Agreement, Plaintiff, for himself and his heirs, executors, administrators and their respective successors and assigns (collectively, "Releasor") hereby irrevocably and unconditionally releases, acquits and forever discharges, to the maximum extent permitted by law, Defendants, and Defendants' respective parent and affiliate companies,

{00116368 1 }        3

stockholders, subsidiaries, affiliates, divisions, successors and assigns, their respective current and former officers, owners, directors, employees, trustees, agents, whether as individuals or in their official capacity, and each of their respective successors and assigns (collectively, "Releasees"), from any and all charges, actions, causes of action, suits, debts, dues, liabilities, obligations, complaints, costs, expenses (including attorneys' fees and costs), sums of money, controversies, accounts, reckonings, liens, bonds, bills, specialties, covenants, contracts, agreements, promises, damages, judgments, executions, claims and demands ("Plaintiff's Released Claims"), arising from Plaintiff's employment with Defendants, whether such Plaintiff's Released Claims lie at law or in equity, are direct or indirect, are known or unknown, are discovered or undiscovered, are suspected or unsuspected, are fixed or contingent, are matured or inchoate, or are liquidated or unliquidated, which are for or related to Plaintiff's rate(s) of pay, wages, minimum wage, overtime pay, spread of hours, recordkeeping, expenses, salaries, benefits, commissions, bonuses or any other work-related compensation and/or any claims of retaliation for having brought or raised any of the foregoing claims; claims pertaining to severance pay or termination pay; and claims arising under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq., the New York Labor Law, any New York wage-hour and wage-payment laws, and/or any other federal, state or local wage-hour, wage-payment, or labor laws. This release shall not extend to any rights for unemployment benefits or any claims which Releasor is precluded from waiving by operation of law or claims that arise after the date of Plaintiff's execution of this Agreement.

2.      Plaintiff further agrees to waive any right to become, and promises not to consent to become, a member of any class in a case in which claims are asserted against Defendants that are related to rate(s) of pay, wages, minimum wage, overtime pay, spread of hours,

{00116368 1 }                                   4

recordkeeping, expenses, salaries, benefits, commissions, bonuses or any other work-related compensation; retaliation for having brought or raised any of the foregoing claims; severance pay or termination pay; and/or arise under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq., the New York Labor Law, any New York wage-hour and wage-payment laws, and/or any other federal, state or local wage-hour, wage-payment, or labor laws. If, without prior knowledge and consent, Plaintiff is made a member of a class in any such proceeding, Plaintiff agrees not to participate or file any class claims in said class action. Plaintiff also waives any right to any monetary recovery should any agency or other third party pursue any of Plaintiff's Released Claims on Plaintiff's behalf.

3.      Plaintiff shall not hereafter file a lawsuit or commence any other legal proceeding, whether in federal, state or any other court, against Defendants asserting causes of action arising out of or related to Plaintiff's Released Claims. If this paragraph is breached by Plaintiff, he shall pay, in addition to damages, all reasonable attorneys' fees incurred by Defendants in defending any such lawsuit, charge, claim, or proceeding. Notwithstanding this covenant not to sue, Plaintiff may bring a claim or lawsuit against the Defendants to enforce this Agreement and may bring any other claim that cannot be waived as a matter of law.

4.      Plaintiff represents that he has not filed any other complaints or charges against Defendants with any federal, state or local agencies or administrative bodies. Plaintiff further represents that he has not filed any judicial actions, lawsuits, charges, claims, demands, appeals or actions against Defendants, other than the Litigation.

5.      Plaintiff acknowledges that his employment with Defendants has ended and that upon receipt of the monies set forth herein, he has been paid in full for all time worked and is

owed no other forms of compensation, including, but not limited to, any wages, vacation or sick pay, accrued benefits, bonus pay or commissions.

**C.   Failure to Make Scheduled Payment.**

1.      In the event that any of the Settlement Amount described herein in Section A, *supra*, is not received in the office of Plaintiff's counsel by the close of business on the due date, or any check given as payment hereunder is dishonored, Plaintiff's counsel shall send notice to cure to Defendants' counsel, Alicia A. Tallbe Esq., via electronic mail to Alicia@yankwitt.com and via First Class U.S. Mail to Yankwitt LLP, 140 Grand Street, Suite 705, White Plains, New York 10601.

2.      In the event Defendants fail to cure such default within 5 calendar days from the receipt of such notice, Plaintiff may seek to enforce the terms of this Agreement, and Plaintiff shall be entitled to recover all reasonable attorneys' fees and costs incurred in enforcing the terms of this Agreement.

**D.   Representations and Acknowledgements.**

1.      Plaintiff represents that he has consulted with his attorney prior to signing this Agreement and that this Agreement is the product of arms-length negotiations between his attorneys and the attorneys for the Defendants.

2.      Plaintiff further represents that:

     (a)      he is competent, as a matter of law, to enter into this Agreement;

     (b)      he has reviewed each and every provision of this Agreement;

     (c)      the Agreement has been explained to him by his attorney;

     (d)      this Agreement appears to him to have been written in a manner calculated to be understood by him;

{00116368 1 }                                    6

(e)     he does in fact fully understand this Agreement, including the release of claims;

(f)     he has relied on his own judgment and that of his counsel regarding the consideration for and language of this Agreement;

(g)     he voluntarily and knowingly enters into this Agreement of his own free will; and

(h)     **he had the terms of this Agreement read to him in his native language, Spanish.**

3.     Plaintiff acknowledges that the settlement memorialized by this Agreement was reached after arms-length negotiations and that this Agreement is fair and reasonable given the risks of litigation, including a bona fide dispute about, among other things, whether Plaintiff was exempt from the FLSA, the number of hours Plaintiff worked, the circumstances of the termination of Plaintiff's employment and the sufficiency of the wage statements and notices provided to Plaintiff.

4.     Plaintiff further represents that none of the Released Parties defined above have made any representations concerning the terms or the effects of this Agreement other than those contained herein, that his decision to sign this Agreement is not based in whole or in part on any statement or promise that does not appear within the four corners of this document, and that he has been fairly represented by his attorneys throughout these proceedings. No statements made by any of the Defendants, their counsel or any other party have in any way coerced or unduly influenced Plaintiff to execute this Agreement.

**E.     Additional Terms.**

1.    Approval by Court. This Agreement, including Defendants' obligation to pay the Settlement Amount and the release and covenants contained herein, shall have no force or effect until the Agreement is approved by the Court.

2.    Non-Disparagement. The Parties and their respective counsel agree that they will not knowingly make or solicit (or encourage others to make or solicit), either directly or indirectly, any derogatory or disparaging statement or communication about any other party to the Litigation; provided, however, that such restriction shall not prohibit or constrain the Parties from (a) providing truthful statements, or (b) enforcing their rights or remedies under this Agreement.    Nothing contained herein shall restrict the Parties' ability to make truthful statements regarding their experience in this Litigation.    The Parties further agree that their respective counsel will not use the terms of this Agreement or the Settlement Amount in any advertising or marketing materials whatsoever, including, among other things, in print, electronic or social media.

3.    Choice of Law and Venue. This Agreement is made and entered into in the State of New York and shall in all respects be interpreted, enforced and governed under the laws of said State.  The parties stipulate and consent that the United States District Court, Southern District of New York shall retain jurisdiction over this matter to enforce the terms of this Settlement Agreement once approved by the Court.

4.    Binding Agreement. This Agreement shall be binding upon the parties and upon their respective heirs, administrators, representatives, executors, predecessors, and assigns, and shall inure to the benefit of Defendants, Plaintiff, and to their respective representatives, predecessors, and assigns.

5.     Jointly Drafted. This Agreement has been jointly drafted by the Parties. The language of all parts of this Agreement shall be construed as a whole, according to its fair meaning, and not strictly for or against any parties, all of whom drafted it.

6.     Complete Agreement. This Agreement sets forth the entire agreement regarding the subject matter hereof between the parties hereto and fully supersedes any and all prior oral or written agreements or understandings between the parties hereto pertaining to the subject matter hereof. This Agreement may be modified only in writing signed by all Parties.

7.     Severability. Should any provision of this Agreement be declared or determined by any court of competent jurisdiction to be illegal or invalid, the remainder of this Agreement shall remain fully enforceable.

8.     No Waiver. Failure to insist on compliance with any term, covenant or condition contained in this Agreement shall not be deemed a waiver of such term, covenant or condition, nor shall any waiver or relinquishment of any right or power contained in this Agreement at any one or more times be deemed a waiver or relinquishment of any right or power at any other time or times.

9.     Notices. Except as otherwise stated in this Agreement, any demand, request or notice served pursuant to this Agreement must be written, and must be served by electronic mail and certified mail, return receipt requested, on the parties at the addresses set forth below, or such different address as parties may designate by notice.

To Plaintiff:          Jacob Aronauer, Esq.
                       The Law Offices of Jacob Aronauer
                       225 Broadway, 3rd Floor
                       New York, NY 10007
                       jaronauer@aronauerlaw.com

To Defendants:    Alicia A. Tallbe, Esq.
                  Yankwitt LLP
                  140 Grand Street, Suite 705
                  White Plains, New York 10601
                  alicia@yankwitt.com

10.    Counterparts.  This Agreement may be executed in counterparts, each of which shall be deemed an original for all purposes.  All counterparts shall be construed together and shall constitute one agreement.

11.    Signatures.  A facsimile or scanned signature shall be deemed an original for all purposes hereunder.

12.    Headings.  Section headings are used herein for reference only and do not affect the meaning of any provision of this Agreement.

13.    No Assignments. The Parties affirm and warrant that no person or entity other than themselves had or has any claims to any interest in the subject matter of the Agreement; that they have the sole right and exclusive authority to execute this Agreement; and that they have not sold, assigned, transferred, conveyed or otherwise disposed of any claim or demand relating to any matter covered by this Agreement.

14.    Authority.  Each Party warrants that he/she/it has the authority to enter into this Agreement for itself or, in the case of Briarcliff Bus Company, Inc., via its authorized representative.  Each party agrees that this Agreement is not valid and binding until it is signed by all the Parties and delivered by any means to the other Parties.

**F.    Knowing Agreement After Consultation With Counsel and Revocation.**

ALL PARTIES HAVE CONSULTED WITH THEIR RESPECTIVE ATTORNEYS PRIOR TO SIGNING THIS AGREEMENT AND REPRESENT TO THE OPPOSING PARTIES THAT THEY HAVE DONE SO. HAVING ELECTED TO EXECUTE THIS

{00116368 1 }                                    10

AGREEMENT, TO FULFILL THE PROMISES AND TO RECEIVE THE SUMS AND BENEFITS SET FORTH ABOVE, PLAINTIFF FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION AND CONSULTATION WITH HIS COUNSEL, ENTERS INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE AND RELEASE THE CLAIMS CONTAINED IN THE RELEASE LANGUAGE IN THIS AGREEMENT. DEFENDANTS HAVE BEEN ADVISED BY THEIR COUNSEL AND UNDERSTAND AND AGREE THAT FAILURE TO FULLY AND TIMELY PAY THE SETTLEMENT AMOUNT MAY RESULT IN FURTHER LITIGATION WHERE THE DEFENDANTS HAVE AGREED TO PAY THE PLAINTIFF'S ATTORNEYS' FEES AND COSTS. HAVING ELECTED TO EXECUTE THIS AGREEMENT, TO OBTAIN THE RELEASES, PROMISES AND BENEFITS SET FORTH ABOVE, DEFENDANTS FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION AND CONSULTATION WITH THEIR COUNSEL, ENTER INTO THIS AGREEMENT INTENDING TO BIND THEMSELVES TO ALL OBLIGATIONS AND POTENTIAL CONSEQUENCES FOR NON-PAYMENT OF ANY AMOUNTS REQUIRED TO BE PAID HEREUNDER.

Execution Copy

The Parties knowingly and voluntarily sign this Settlement Agreement and Release as of the date(s) set forth below:

**SIGNED AND AGREED TO:**

Dated: _____

STATE OF _____ )
                    )ss.:
COUNTY OF _____ )

```
Jacob Aronauer
Notary Public, State of New York
Qualified in New York County
No. 02AR6360901
Commission Expires on June 26, 20__
```

PABLO ALVAREZ

On _____, 2019 before me personally came to me PABLO ALVAREZ known to me to be the individual described in, and who executed the foregoing Settlement Agreement and Release, and duly acknowledged to me that he executed the same.

_____
Notary Public

**SIGNED AND AGREED TO:**

Dated: _____

STATE OF          )
                        )ss.:
COUNTY OF          )

BRIARCLIFF BUS COMPANY, INC.
By: _____
Officer and Authorized
Representative

On _____ 2019 before me personally came JOHN BORHO and acknowledged him/herself to be an officer and an Authorized Representative of BRIARCLIFF BUS COMPANY, INC. and that s/he, as such, being authorized so to do, executed the foregoing instrument for the purposes therein contained, by signing his/her name on behalf of the corporation by him/herself as an officer and an Authorized Representative.

_____
Notary Public

{00116368 1 }                    12

The Parties knowingly and voluntarily sign this Settlement Agreement and Release as of the date(s) set forth below:

**SIGNED AND AGREED TO:**

Dated:_____

                                   PABLO ALVAREZ

STATE OF         )
                  )ss.:
COUNTY OF     )

      On _____, 2019 before me personally came to me PABLO ALVAREZ known to me to be the individual described in, and who executed the foregoing Settlement Agreement and Release, and duly acknowledged to me that he executed the same.

_____

Notary Public

**SIGNED AND AGREED TO:**

Dated: July  2, 2019

                            BRIARCLIFF BUS COMPANY, INC.
                            By:_____
STATE OF  New York  )
                            Officer and Authorized
                  )ss.: Briarcliff  Manor   Representative
COUNTY OF  westchester )

On July  2  2019 before me personally came JOHN BORHO and acknowledged him/herself to be an officer and an Authorized Representative of BRIARCLIFF BUS COMPANY, INC. and that s/he, as such, being authorized so to do, executed the foregoing instrument for the purposes therein contained, by signing his/her name on behalf of the corporation by him/herself as an officer and an Authorized Representative.

_____

Notary Public

Execution Copy

**SIGNED AND AGREED TO:**

Dated: 7-2-2019

STATE OF New York )
)ss.: Briard ff Manor
COUNTY OF Westchester )

JOHN BORHO

On July 2, , 2019 before me personally came to me JOHN BORHO known to me to be the individual described in, and who executed the foregoing Settlement Agreement and Release, and duly acknowledged to me that he executed the same.

Notary Public

# EXHIBIT A

Execution Copy

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

PABLO ALVAREZ,                                    Case No.: 7:18-cv-12379-CS

                              Plaintiff,

        -vs.-
                                                  **VOLUNTARY DISMISSAL
                                                  WITH PREJUDICE**
BRAIRCLIFF BUS COMPANY, INC.
and JOHN BORHO, individually,

                              Defendants.
-------------------------------------------------------------X

        **IT IS HEREBY STIPULATED AND AGREED,** by and between the undersigned
Parties, through their respective counsel, that the above action be and is hereby dismissed with
prejudice, without costs to either party.

        The Court shall retain jurisdiction over the settlement for the purposes of the enforcement
of the provisions thereof.

Dated: New York, NY                               Dated: White Plains, NY

_____, 2019                               7/8_____, 2019

**THE LAW OFFICES OF
JACOB ARONAUER**                                  **YANKWITT LLP**

_____                             _____
Jacob Aronauer, Esq.                              Alicia A. Tallbe, Esq.
225 Broadway, 3rd Floor                           140 Grand Street, Suite 705
New York, NY 10007                                White Plains, New York 10601
(212) 323-6980                                    (914) 686-1500
*Attorney for Plaintiff*                          *Attorney for Defendants*

SO ORDERED this ____ day
of _____, 2019

{00116368 1 }                      15

**EXHIBIT B**

## Pablo Alvarez - Bus Driver

### Summary of Plaintiff's Claimed Damages

| | | |
|---|---|---|
| Unpaid Wages | $ | 50,294.91 |
| NYLL Liquidated Damages | $ | 50,294.91 |
| Notice Damages | $ | 10,000.00 |
| Total | $ | 110,589.83 |

**EXHIBIT C**

# Law Offices of Jacob Aronauer

# INVOICE

225 Broadway, 3rd Floor
New York, New York 10007
United States
Phone: (212) 323-6980

Invoice # 121
Date: 07/08/2019
Due On: 08/07/2019

Pablo Alvarez

## 00227-Alvarez

## Alvarez v. Briarcliff Bus Company

| Type | Date | Notes | Quantity | Rate | Total |
|------|------|-------|----------|------|-------|
| Service | 11/28/2018 | Paralegal Fees - John: Drafted Complaint, came up with questions to ask Alvarez at Friday Meeting, researched defendants and school that is their primary contract. | 4.35 | $150.00 | $652.50 |
| Service | 12/10/2018 | Paralegal fees - Elias: Met with client. Drafted retainer agreement. | 2.00 | $150.00 | $300.00 |
| Service | 12/10/2018 | Paralegal fees - Elias: Drafting spreadsheets based on Alvarez's records | 2.30 | $150.00 | $345.00 |
| Service | 12/11/2018 | Paralegal fees - Elias: Editing complaint | 5.22 | $150.00 | $783.00 |
| Service | 12/13/2018 | Paralegal fees - Elias: Drafting Spreadsheet | 5.20 | $150.00 | $780.00 |
| Service | 12/14/2018 | Paralegal fees - Elias: Drafting spreadsheet | 1.25 | $150.00 | $187.50 |
| Service | 12/14/2018 | Attorney Fees: Review spreadsheet. | 0.20 | $350.00 | $70.00 |
| Service | 12/31/2018 | Attorney Fees: Work on complaint and file complaint. | 1.90 | $350.00 | $665.00 |
| Service | 02/14/2019 | Paralegal Fees - Katheryn: phone call with client to review trips out of NY State | 0.11 | $150.00 | $16.50 |
| Service | 03/15/2019 | Paralegal Fees - Sian: review complaint and spreadsheet draft; revised spreadsheet; reviewed documents from Defendants | 1.50 | $150.00 | $225.00 |
| Service | 03/20/2019 | Paralegal Fees - Katheryn: Scanned paystubs, edited pay stubs and organized them in files. | 2.00 | $150.00 | $300.00 |
| Service | 03/21/2019 | Paralegal Fees - Sasha: scanned paystubs, redacted, and reorganized folders. | 1.92 | $150.00 | $288.00 |
| Service | 03/21/2019 | Paralegal Fees - Katheryn: Scanned paystubs, edited pay stubs and organized them in files. | 4.00 | $150.00 | $600.00 |

| | | | | | |
|---|---|---|---|---|---|
| Service | 03/22/2019 | Paralegal Fees - Katheryn: Scanned paystubs, edited pay stubs and organized them in files. | 4.00 | $150.00 | $600.00 |
| Service | 04/04/2019 | Paralegal Fees - Katheryn: Phone Call Pablo Alvarez to confirm appointment on April 22 at 4pm for Prep for Mediation. | 0.05 | $150.00 | $7.50 |
| Service | 04/22/2019 | Attorney Fees: Pre-settlement conference with client. | 0.60 | $350.00 | $210.00 |
| Service | 04/24/2019 | Paralegal Fees - Karin: Edited spreadsheet to include punitive damages for unlawful termination and for emotional distress; edited calculation of average overtime hours worked. | 0.80 | $150.00 | $120.00 |
| Service | 04/24/2019 | Paralegal Fees - Sasha: Research regarding if obtaining emotional damages is allowed under FLSA in the second circuit. the answer is yes. | 1.34 | $150.00 | $201.00 |
| Service | 04/24/2019 | Paralegal Fees - Katheryn: Reviewed Documents provided by Defendants | 1.98 | $150.00 | $297.00 |
| Service | 04/26/2019 | Paralegal Fees - Sasha: Research on judge Seibel | 0.17 | $150.00 | $25.50 |
| Service | 04/26/2019 | Attorney Fees: Work on Alvarez pre-mediation statement. | 3.10 | $350.00 | $1,085.00 |
| Service | 04/30/2019 | Paralegal Fees - Angelica W.: Translating for mediation | 3.40 | $150.00 | $510.00 |
| Service | 04/30/2019 | Attorney Fees: Mediation. | 2.40 | $350.00 | $840.00 |
| Service | 04/30/2019 | Paralegal Fees - Angelica W.: Mediation in White Plains | 3.01 | $150.00 | $451.50 |
| Service | 05/01/2019 | Paralegal Fees - Karin: Revised spreadsheet summary page | 0.30 | $150.00 | $45.00 |
| Service | 05/14/2019 | Attorney Fees: Prepare for initial case conference; actual case conference; travel to and from courthouse. | 2.40 | $350.00 | $840.00 |
| Service | 05/14/2019 | Attorney Fees: Call with opposing counsel. | 0.10 | $350.00 | $35.00 |
| Service | 05/24/2019 | Paralegal Fees - John: Reviewed Defendants document production and assured all dates were added to document outlining interstate travel of our client. Added additional dates, spoke with Jacob about results | 0.44 | $150.00 | $66.00 |
| Service | 05/24/2019 | Attorney Fees: Review new documents and conference call with opp. counsel. | 0.80 | $350.00 | $280.00 |
| Service | 06/06/2019 | Paralegal Fees - Katheryn: Drafted Initial Disclosures and Documents Requests. | 5.20 | $150.00 | $780.00 |
| Service | 06/06/2019 | Paralegal Fees - Katheryn: Phone call with client. | 0.20 | $150.00 | $30.00 |
| Service | 06/06/2019 | Attorney Fees: Settlement e-mails with opposing counsel and phone call with co-counselor and client in re settlement. | 0.20 | $350.00 | $70.00 |

| | | | | | |
|---|---|---|---|---|---|
| Service | 06/11/2019 | Paralegal Fees - John: Drafted settlement approve letter and settlement agreement. Legal research into Judge Seibel's decisions | 2.23 | $150.00 | $334.50 |
| Service | 06/11/2019 | Attorney Fees: Review proposed settlement agreement. Make edits and then have a phone call with Vin to discuss the proposed edits. | 0.80 | $350.00 | $280.00 |
| Service | 06/23/2019 | Attorney Fees: Work on settlement application letter and further edits to settlement agreement. | 0.90 | $350.00 | $315.00 |
| Service | 06/24/2019 | Paralegal Fees - Karin: Edited settlement agreement, edited settlement letter, edited damages spreadsheet | 2.50 | $150.00 | $375.00 |
| Service | 06/25/2019 | Attorney Fees: Work on settlement agreement and settlement Cheeks letter and phone call with Bauer discussing edits. | 0.90 | $400.00 | $360.00 |
| Service | 07/01/2019 | Paralegal Fees - Angelica W.: Translation to Spanish of Settlement Agreement, and email it to client. | 2.00 | $150.00 | $300.00 |
| Service | 07/03/2019 | Attorney Fees: Review opp. counsel's edits to settlement agreement. | 0.20 | $400.00 | $80.00 |
| Service | 07/04/2019 | Attorney Fees: Meeting with client to go over the settlement agreement. | 0.70 | $400.00 | $280.00 |
| Service | 07/08/2019 | Attorney Fees: Putting together settlement application letter to Court. | 0.40 | $400.00 | $160.00 |

**Total**     **$14,190.50**

## Detailed Statement of Account

### Current Invoice

| Invoice Number | Due On | Amount Due | Payments Received | Balance Due |
|---|---|---|---|---|
| 121 | 08/07/2019 | $14,190.50 | $0.00 | $14,190.50 |
| | | | **Outstanding Balance** | **$14,190.50** |
| | | | **Total Amount Outstanding** | **$14,190.50** |

Please make all amounts payable to: Law Offices of Jacob Aronauer

Please pay within 30 days.

Vincent Bauer - Attonery's Fees and Hours worked on Alvarez v. Briarcliff Bus Company

| Date | Time | | Description |
|---|---|---|---|
| 2/4/19 | | 1.1 | Review Complaint MCA research |
| 2/28/19 | | 0.4 | Reviewout of state schedule |
| 4/22/19 | | 1.5 | Conference with Client, prepare for same |
| 4/29/19 | | 1.9 | Mediation preparation |
| 4/30/19 | | 2.4 | Mediation |
| 5/2/19 | | 0.3 | Teleconference regarding Settlement |
| 5/24/19 | | 0.4 | Teleconference regarding Settlement |
| 5/29/19 | | 0.2 | Added edits to Settlement Agreement |
| 6/10/19 | | 0.2 | Review Settlement and Phone call with Jacob to discuss Settlement edits |
| Total of hours worked | | 8.4 | |
| Hourly rate | $    450.00 | | |
| Total Fee | $ 3,780.00 | | |